E-FILED
Thursday, 29 October, 2020  02:10:05 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

| | | |
|---|---|---|
| AUSTIN A. BURNS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 14-cr-20050 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

<u>**MOTION TO VACATE SENTENCE
PURSUANT TO 28 U.S.C. § 2255**</u>

Petitioner Austin A. Burns, through his attorney, Charles G. Schierer, moves this Court to vacate his sentence pursuant to 28 U.S.C. § 2255. In support of his motion, Mr. Burns states as follows:

**I. INTRODUCTION**

Petitioner, through undersigned counsel, hereby respectfully moves this Court pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. On October 5, 2020, Petitioner filed a *pro se* § 2255 motion in which he raised two grounds: (1) Judge Colin Bruce failed to recuse himself and (2) that he received ineffective assistance of counsel when his "lawyer failed to preserve [his] rights.  The undersigned counsel was appointed and now files this pleading, which is intended to supplement Petitioner's *pro se* pleading.

On August 11, 2014 a complaint was filed against the Petitioner alleging the sexual exploitation of a child.  See Docket #1.  He was indicted on the charge on September 10, 2104. See Docket #8.  His attorney filed for an emergency mental health examination on October 24, 2014.  See Docket # 14.  The mental health examination was completed and report filed in

January of 2015.  Petitioner filed no other pretrial motions.  After requesting a pre-plea guideline calculation, Petitioner entered an 11(c) plea on September 21, 2015.

On January 25, 2016, Judge Colin Bruce sentenced Petitioner to 270 months in federal prison.  Petitioner's total offense level was 35 and his criminal history category was V, leaving him with a guideline range of 262 to 327 months.  The charge had a 15-year minimum, was enhanced to 25-years, based on a prior conviction.  Petitioner avoided the mandatory minimum sentence by entering a cooperation agreement.  According to the PSI, Petitioner had a history of mental illness and reported prior suicide attempts.  See Docket #26.  Prior to the arrest in this case, he had admissions to mental health facility.   Petitioner was a teenager at the time he requested nude photographs from a 13-year old female.  At the time, Petitioner lived in South Dakota, but was communicating on the internet with a female in Champaign, Illinois.   Petitioner was a high school dropout, but had obtained his GED.

Unknown to Petitioner at the time his case was pending before, and ultimately sentenced by, Judge Bruce, that continued *ex parte* communications were occurring between Judge Bruce and the office responsible for prosecuting Petitioner.  This improper conduct violated Petitioner's due process right to be sentenced by an unbiased judge, and his right to be sentenced by a judge who did not even have the appearance of bias.


## II. EQUITABLE TOLLING OF STATUTE OF LIMITATIONS

Petitioner's *pro se* filing on October 6, 2020 was entered beyond one-year after judgment was final in this case.  A federal prisoner must file their motion pursuant to 28 USC §2255 within one year of their conviction becoming final.  The statute provides a few exceptions to the on-year period of limitations in cases where there was an impediment from making a motion.

2

See §2255(f)(2)-(4).  Under such qualifying circumstances, the one-year limitations period begins running once the limitation is removed or the newly created right or newly discovered information is available.  *Id.*

"An attorney's unprofessional conduct can be so egregious as to create an extraordinary circumstance warranting equitable tolling."  *Holland v. Florida*, 560 U.S. 631 (2010).  While the *Holland* case was reversed on the grounds of due diligence, the court made clear that the doctrine of equitable tolling applies in such matters.  *Id*.

Petitioner was represented by the Federal Public Defender in the Central District of Illinois.  Mr. Thomas W. Patton wrote Petitioner on January 29, 2020 to confess "a serious legal error."  See Exhibit A.  In this letter, Petitioner is informed for the very first time that the Federal Public Defender's Office had failed to preserve his right to raise a claim that Judge Bruce's failure to recuse himself, violated Petitioner's right to due process and supported a claim for a new trial or sentencing.  Petitioner diligently filed his *pro se* filing upon learning of the mistake.

### III. JUDGE BRUCE'S DISCRETIONARY RULING

### SENTENCING HEARING

Judge Bruce exercised his judicial discretion at the January 25, 2016 sentencing. Petitioner agreed to accept responsibility and cooperate per a plea agreement.  His guideline range was 262 to 327 months.  That range was increased to 300 to 327 months due to the mandatory minimum of 25 years, imposed due to his prior conviction.  Judge Bruce sentenced Petitioner to the lower end, at 270 months. This sentence was in light of his cooperation. Petitioner entered an 11(c) plea and agreed to cooperate.  While that allowed him to avoid the

mandatory minimum, he received an otherwise guideline range sentence (when the enhancement is not considered).

## IV. JUDGE COLIN BRUCE'S COMMUNICATIONS

## JUDGE BRUCE IS REMOVED FROM ALL CRIMINAL MATTERS

On August 17, 2018, Judge Bruce was removed from all criminal cases and any civil case in which the United States Attorney's office for the Central District of Illinois represents a party. Judge Bruce's removal from these cases came after proof of extensive, *ex parte* communications with the United States Attorney's Office for the Central District of Illinois was revealed.  Judge. Judge Bruce's conduct first came to light in *United States v. Nixon*, Case No. 15-20057 (C.D. Ill.).  He engaged in improper *ex parte* communications with a member of the United States Attorney's Office during the *Nixon* trial. A later review of email communications, conducted by the United States Attorney's Office, revealed more troublesome emails.  Nixon filed a Motion for a New Trial.  *United States v. Nixon,* No. 15-20057 (C.D. Ill.), Docket # 173, 204.  On August 19, 2020, the District Court granted the motion and vacated Defendant's conviction and sentence.  *Nixon*, Docket # 224.

## EMAILS INCORPORATED BY REFERENCE

This court has been fully informed of the Judge Bruce emails that were made apart of the *Nixon* record.  See *United States v. Nixon*, No. 15-cr-20057, Docket #213-1.  Petitioner asks that those emails be made apart of the record in his case by reference.  Additional emails that involve matters other than *Nixon* were also made apart of the record in that case.  See *United States v.*

4

*Nixon*, No. 15-cr-20057, Docket #214-1.  Again, Petitioner ask that those emails be made apart of the record in this case by reference.

## SELECTED EX PARTE EMAILS

Petitioner highlights a few of the emails that were made apart of the record in *Nixon*.  The below emails refer to a number of employees with the United States Attorney's Office. During the *Nixon* trial, Judge Bruce's *ex parte* communications dealt directly with the case before him.  On Saturday, December 17, 2016, at 2:11 p.m., Judge Bruce replied to Ms. Hopps' email. Judge Bruce responded:

> Trial. Elly.
>
> Where evidently the Elly and Co. decided they did not want to win by letting an entirely inexperienced DOJ attorney cross examine THE DEFENDANT. (Here are some words she evidently does not know: "alleged' "supposedly" "your story")
>
>
> Are you ever going to come over here and do another trial?

At 4:00 p.m. Ms. Hopps replied: "Are you kidding me?!?! Wow. Never ):. Staci is the paralegal in training over there so I'm o-u-t.

At 5:10 p.m. Judge Bruce replied:

> Damn it! I could use a little Lisa Hopps in the courtroom just to see you.
> Staci is doing a good job, so you trained her well.

So far in this trial in the over one hour cross-examination, the DOJ
attorney has done a WONDERFUL job of repeating the bullshit the
defendant said as if the defendant's story was all fact.

How about the BASIC cross-examination skill of saying "and then the
ALLEGED event took place" or "and then, SUPPOSDEDLY [sic] this
happened" or "so ACCORDING TO YOUR STORY . . . ."

This trial went from a slam-dunk for the prosecution to about a 60-40 for
the defendant, and there is more cross-examination to go . . . . . .

At 7:55 p.m., Ms. Hopps replied: "DITTO my friend!! She is, I'm happy for her.
OMG. How do you sit through that? I can just see you looking like you're bored to death,
but on the inside, you're craking yourself up with jokes! I would NOT be able to make eye
contact with you. hahahahaha"

On Sunday, December 18, 2016, at 12:45 p.m., Judge Bruce replied as follows:

I work hard not to try any of the cases.

I actually have a sign on the bench from Judge Baker that says "DO NOT
TRY THE CASE".

When I'm not making internal jokes or when I'm not completely bored,
lots of times I am cringing.

I really cringed when the inexperienced DOJ attorney starting crossing the
defendant in the case.. [sic]

During this cross-examination, I keep wanting to say "Seriously? That is

your plan? Repeat the testimony of the defendant as though it was fact and

then say, 'Right?'"

And if you were in the courtroom, yes, I would be giving you looks that

would make you crack-up.

On November 21, 2013, Klayer emailed Judge Bruce about how sad she was that he was

gone, to which Judge Bruce replied "Sorry. I miss all of you and everyone else . . .Ok, maybe not

Shakey Pete . . . . . I'm pretty bored and a little lonely up here. I'll keep making reasons to come

back to the USAO . . . . (so where IS my favorite highliter? . . . . Must be in the USAO . . . .).

Klayer then responds, "I hid it. It might take all day in here for you to find it. Come on

down!!!!." *Id*. at 60. Recall, this is during the time period Judge Bruce was recused from hearing

criminal cases prosecuted by his former office presumably so there could be a "cooling off

period" in which he could distance himself from the office.

On November 26, 2013, in an email chain between Klayer and Judge Bruce that began

with a discussion of Judge Bruce providing a letter of recommendation for a summer intern,

Judge Bruce asked Klayer, "Ho's [sic] the Urbana Supervisor's on-line shopping going?!" to

which Klayer responds, "OMG – between her and SONI it's a shopfest. I would love to review

their online activity! We need a new supervisor – bad. I still miss you. *Id*. at 77.

Later on December 6, 2013, Hopps emailed Judge Bruce, "They have been given

authority to post my [redacted]!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!!! I'm freaking out!!!!!!!!!!!!!!!! It's

still doesn't mean it's good to go, but I've got a shot!!!!!!!!!!!! THANK YOU FOR

EVERYTHING YOU DID FOR ME! I'll keep you posted! P.S. – Delete your freaking messages

so I can leave you one on your super-duper phone!" *Id*. at 111. Later emails make clear the

posting Hopps is referring to is for an increased federal pay grade. Judge Bruce responded to

Hopps' email, "I thought it would work. You will get it. You deserve it." *Id*. at 112. Hopps responds, "Aw, thanks Colin. [emoji smiley face] Did you delete your messages on your phone yet? *Id*. at 114. Judge Bruce then replies that he is going to the Verizon store to fix an issue he is having with his voicemail and tells Hopps "I want to know the moment you get the [redacted]. (I wonder how honked off Crazy and her henchman are going to be….) Later emails reveal Judge Bruce meeting with U.S. Attorney Jim Lewis and discussing Hopps' promotion and Hopps receiving the promotion. This email exchange, and later emails between Hopps and Judge Bruce on this subject confirm Judge Bruce's continued participation in the management of the USAO. Additionally, this email shows communication by telephone in addition to email.

On December 19, 2013, Klayer emailed Judge Bruce saying "Sorry I missed your calls last night – I saw on my phone about 8:00 that you had called" and then discussed the exchange of Christmas gifts between some USAO staff. *Id*. at 208. Judge Bruce responds, "Talked to Jason last night after I couldn't talk to you. Eric knows it's bad. Eric concluded Eugene is unwilling to help ("Scooter mode"). I told him I learned that about two years before. I told Eric he has no good options and just needs to come over more often and GET RON! DA OFF AWS so she is in the office and supervising. I am afraid it's only going to get worse. BTW, the Urbana numbers are dropping since I switched out of rain-making mode last summer. That needs to be fixed also." *Id*. at 209. This email further reveals Judge Bruce's active involvement in managing the USAO office. Additionally, this is a United States District Judge encouraging more prosecutions. That is not the action of a neutral participant in the criminal justice system.

Klayer responded to Judge Bruce's email by further commenting on the supervising AUSA buying Christmas gifts for only some of the staff. Judge Bruce responded, "The whole "Supervisor Separation" concept did not sink in. Being a supervisor can be lonely; it's also

8

necessary to maintain morale. Eric and John Childress have both talked to me about the group of Eugene, Jason, Tim and Joe. I let them know things are better now that Rick is gone, but the White Man Power Group is still in operation. Ronda needs to step up or Eugene needs to have a chance a supervisor. He will need to change his behavior also. If he does not, it will be as bad as Ronda." *Id*. at 212. This email again shows Judge Bruce speaking with the senior management in the USAO about the internal operations of the USAO.

On February 27, 2014, Hopps emailed Judge Bruce, "Guess who's making her move for an 11 and is being helped along by the powers that be……..I called it." *Id*. at 346.  This email refers back to the emails regarding the promotion discussed above on pages 7-8 of this pleading. Judge Bruce responded, "Will not happen….." *Id*. at 347. There is then a long series of emails between Judge Bruce and Hopps discussing whether Hopps or someone else in the USAO will receive the promotion culminating in Hopps informing Judge Bruce that she received the promotion and "Thank you so much for everything that you did to help me reach this goal. I'm confident if you hadn't pushed it never would have happened. Thank you, thank you, thank you. *Id*. at 348-364.

On October 10, 2014, Judge Bruce sent an email to AUSA Jason Bohm with the subject line "Seriously: nice job on your recent oral argument. Posner was a dick to you." Bohn replied, "Thanks. It was an experience. Judge Tinder was kind to me." *Id*. at 846. The oral argument referred to was in *United States v. Smith*, Case No. 14-2223 (7th Cir. 2014), in which the Federal Public Defender's Office represented Mr. Smith before the Seventh Circuit.

On October 27, 2014, Klayer emailed Judge Bruce regarding the Seventh Circuit's opinion in the *Smith* case which Bruce had previously exchanged emails about with Bohm. *Id*. at 855. In the opinion the Seventh Circuit found Judge Darrow had erred by not recusing herself

from Mr. Smith's revocation case because she had previously appeared on behalf of the government in the original prosecution of Mr. Smith. Judge Bruce responded to Klayer's email by stating, "This is potentially a big deal. It might be you do not see me in revocation hearings for years and years………" to which Klayer responded, "That's what I was afraid of." *Id*. at 856-57.

On June 4, 2015, Judge Bruce emailed U.S. Attorney Lewis to recommend a former intern at the USAO Urbana office for a job with the USAO, and asking if Lewis wanted to meet for lunch soon. *Id*. at 1158. Lewis responded regarding the recommendation, adding, "and yes I'll get over and we can catch up (lot going on)." *Id*. at 1159.

On July 6, 2015, Klayer sent Judge Bruce and email with a copy of the appellate brief filed in the Jermain Speed appeal. *Id*. at 1228. Klayer says she's forwarding the brief to Judge Bruce for his review "given the issues that were raised on appeal." *Id*. Judge Bruce presided over Mr. Speed's case in the district court. Judge Bruce responded, "Unbelievable. Thanks for the early warning." *Id*. at 1294.

On October 28, 2015, Judge Bruce emailed AUSA Jason Bohm with the subject line "Nice job." *Id*. at 1766. The email stated, "Jason, Nice job in US v Armour. Good ammo for your Speed argument also. Top notch. ---Colin." "US v. Armour" referred to the Seventh Circuit's opinion in *United States v. Armour*, 804 F.3d 859 (7th Cir. 2015), which was issued on October 26, 2015. The case involved challenges to conditions of supervised release similar to those raised in the Jermaine Speed appeal the USAO had brought to Judge Bruce's attention by forwarding him a copy of Mr. Speed's appellate brief. Thus the reference to "good ammo for your Speed argument also." This is Judge Bruce actively assisting the United States in a pending case. While AUSA Bohm was certainly intelligent enough to use the *Armour* opinion in *Speed*, that does not

10

alter the fact that Judge Bruce offered unsolicited advice to his former colleague on how to

substantively represent the government in a pending criminal case.

On January 19, 2016, Judge Bruce emailed AUSA Jason Bohm regarding the Seventh

Circuit's affirmance of Jermaine Speed's sentence saying, "Well done, sir. Well done." *Id*. at

1939.

On February 1, 2016, Judge Bruce sent an *ex parte* email to AUSA Elly Peirson with

regard to her performance in *United States v. Gmoser*, 14-cr-20048, telling Peirson, "My bad.

You're doing fine. Let's get this thing done." *Id*. at 1985. The "thing" to get done was Mr.

Gmoser's trial.

On March 11, 2016, Klayer forwarded to Judge Bruce an email she sent to U.S. Attorney

Lewis asking to be promoted from a legal assistant to a paralegal and asking Judge Bruce, "Wish

me luck!!!!!!!!!" *Id*. at 2038. Judge Bruce in response wishes Klayer good luck. *Id*. at 2040. On

April 17, 2016, Judge Bruce emails U.S. Attorney Lewis about going to lunch and Lewis agrees

with a date set for Wednesday April 20, 2016. *Id*. at 2138-41. On Wednesday, April 20, 2016k,

at 12:56:10 p.m. Judge Bruce emails Klayer, "I took care of it for you. You're a lock for the

paralegal spot." *Id*. at 2142. There could not be a more direct example of Judge Bruce continuing

to participate in the management of the USAO.

On July 21, 2016, Judge Bruce emailed AUSA Jason Bohm regarding the Seventh

Circuit's opinion affirming the sentence Judge Bruce imposed in *United States v. Dorsey*, Case

No. 15-3341 (7th Cir.), telling Bohm, "Nice job. Thanks." Can there be any doubt Judge Bruce

sees himself as being on the same team as the USAO?

On October 31, 2016, Klayer emails Judge Bruce asking him "Wish me luck

tomorrow!!!!! New trial presentation software . . . Trial Director. Praying all goes as

11

planned!!!!!!" *Id*. at 2479. What Klayer is asking good luck wishes on her role in helping to
prosecute Jose Lopez at his trial in *United States v. Lopez*, 16-CR-20004. Judge Bruce responds
by assuring Klayer, "Everything will be fine . . . . ." *Id*. at 2480.

On July 25, 2017, Judge Bruce emailed AUSA Jason Bohm "Well done, compadre. Well
done." *Id*. at 2902. It appears this email is in response to the Seventh Circuit's opinion in *United
States v. Parkhurst*, 865 F.3d 509 (7th Cir. 2017), affirming the conviction and sentence of Mr.
Parkhurst whose trial and sentencing was conducted by Judge Bruce. AUSA Bohm represented
the government before the Seventh Circuit.

## V. LAW AND ARGUMENT

### SUMMARY OF ARGUMENT

Petitioner's due process rights were violated because Judge Bruce was actually bias
against him.   Actual bias has been demonstrated circumstantially through the duration, breadth
and content of his *ex parte* communications with the office prosecuting Petitioner.   These *ex
parte* communications show "actual bias, or a possible temptation so severe that we might
presume an actual, substantial incentive to be bias."   Judge Bruce never left the United States
Attorney's Office in mind and spirit, despite physically leaving to take the bench.   In the
alternative, the government has conceded Judge Bruce's conduct created the appearance of bias.
Under 18 U.S.C. § 455(a), Judge Bruce was required to recuse himself.   When applied to
Petitioner's case, the *Liljeberg* factors weigh in favor of finding Judge Bruce's failure to recuse
himself was not harmless error.   Petitioner's claims are cognizable under 28 U.S.C. § 2255(a),
regards of whether this court finds actual or appearance of bias.   Accordingly, Petitioner seeks a
ruling that Judge Bruce was actually bias and therefore his conviction and sentence should be

12

vacated.  In the alternative, the appearance of bias coupled with the failure to recuse creates was

not harmless error and creates too great of a risk of injustice to Petitioner, and as result

Petitioner's sentence should be vacated and he should be re-sentenced before a different judge.


## ACTUAL BIAS

"The Due Process Clause guarantees litigants an impartial judge, reflecting the principle

that "no man is permitted to try cases where he has an interest in the outcome." *Franklin v.*

*McCaughtry*, 398 F.3d 955, 959 (7th Cir. 2005) (*quoting In re Murchison*, 349 U.S. 133, 136

(1955)). "To prove disqualifying bias, a petitioner must offer either direct evidence or 'a possible

temptation so severe that we might presume an actual, substantial incentive to be biased.'" *Id*.

(*quoting Del Vecchio v. Illinois Dep't of Corr.,* 31 F.3d 1363, 1380 (7th Cir.1994) (en banc)).

"[T]he Due Process Clause clearly requires a 'fair trial in a fair tribunal,' before a judge with no

actual bias against the defendant or interest in the outcome of his particular case." *Bracy v.*

*Gramley*, 520 U.S. 899, 904-05 (1997) (internal citation omitted). "To prove disqualifying bias, a

petitioner must offer either direct evidence or 'a possible temptation so severe that we might

presume an actual, substantial incentive to be biased.'" *Franklin v. McCaughtry*, 398 F.3d 955,

959 (7th Cir. 2005) (*quoting Del Vecchio v. Illinois Dep't of Corr.,* 31 F.3d 1363, 1380 (7th

Cir.1994) (en banc)). "Absent a 'smoking gun,' a petitioner may rely on circumstantial evidence

to prove the necessary bias." *Id*.

A trial before a biased judge is structural error. *Tumey v. Ohio*, 273 U.S. 510, 535 (1927)

("No matter what the evidence against [the defendant], he had the right to have an impartial

judge."); *Neder v. United States*, 527 U.S. 1, 8 (1999) (including "biased trial judge" among very

limited class of errors constituting structural error). Structural errors constitute a "defect

affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991). Structural errors "are so intrinsically harmful as to require automatic reversal (*i.e.*, "affect substantial rights") without regard to their effect on the outcome." *Neder*, 527 U.S. at 7. In other words, structural errors are not subject to harmless error analysis. *Id*.

## ACTUAL BIAS & JUDGE BRUCE'S EMAILS

Taken as a whole, Judge Bruce's emails demonstrate actual bias against this Petitioner and all criminal defendants. Judge Bruce revealed a deep and abiding affiliation with the United States Attorney's Office over the course of many e-mails and much time. His prior authoritative position in that office instilled deference in employees still working there. His influence over others still there and their opinions and day-to-day activities is readily apparent in reading the evidentiary e-mails. His interest in the success of the prosecutor's office was deep and abiding; his attitude toward the office even after having left it for years was paternalistic—he took much interest in its ongoing success as if it was 'his baby' and as if he were still there and as if its success or failure as a whole was a reflection upon him. His office was not going to be defeated on his watch.

Anyone who reads the evidentiary e-mails, as a whole, could come to no other conclusions. The breadth of the emails reveals his concerns were wide-ranging: office politics, relationships, efficiency, and, by inference, in the success or failure of the office as a whole. By inference it is fair to assume this interest may have extended to conviction rates and the severity of sentences. Often the emails reveal the closeness between Judge Bruce and the United States Attorney's Office in an open and unabashed manner. However, the *ex parte* nature of the

14

communications is particularly troubling.  This reveals a sense that Judge Bruce was delivering messages that were intended to be confidential and, perhaps, helpful to only one side of a matter at issue.  His actions were deliberately meant to remain secret.  As such, his actions strongly imply that he had an actual bias against the Petitioner and other criminal defendants.  Judge Bruce had deep roots in the United States Attorney's Office.  The deepest roots feed the highest branches of the tree.

Even though none of the emails are directed specifically at this Petitioner, collectively they show "possible temptation so severe that we might presume an actual, substantial incentive to be biased."  Considering the content and breadth of the *ex parte* communications with the prosecution, "an objective, disinterested observer fully informed of the reasons that recusal was sought would entertain a significant doubt that justice would be done in the case."

## SPECIAL COMMITTEE REPORT

The government will argue this issue of actual bias was already decided by the Judicial Council of the Seventh Circuit.  See Special Committee Report, Complaints Against District Judge Colin S. Bruce, Nos. 07-18-90053 & 07-18-90067 (May 8, 2019) ("Special Comm. Report").   The Special Committee Report was prepared in accordance with 28 U.S.C. § 353.  The rules for such investigations and reports are set out in 28 U.S.C. § 358.  Petitioner was not a party to the investigation.  Neither was the government.  As neither Petitioner not the government were parties, participated in the investigation, presented documents or cross-examined any witnesses, neither party can be held to the findings or determinations of the Special Committee.  In other words, collateral estoppel does not prohibit a finding of actual bias.

The Judicial Council's findings are limited in scope.  The Judicial Council stated it had "identified no evidence suggesting that Judge Bruce's *ex parte* contact or relationship with the U.S. Attorney's Office in the Central District of Illinois impacted his decision making in any case."  See Order & Memorandum, *In re Complaints Against District Judge Colin S. Bruce*, Nos. 07-18-90053 & 17-18-90067 (May 14, 2019).  According to the Special Committee Report, it reviewed some documents, but there is no indication that it reviewed the docket as it pertained to Petitioner, any of its pleadings or any transcripts from the proceedings.  As Petitioner was not provided notice or present, Petitioner was not able to present such evidence.

## RECUSAL AND THE APPEARANCE OF BIAS

Pursuant to 28 U.S.C. § 455(a), "[a]ny justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questions."  Courts have interpreted the purpose of the statute is to avoid even an appearance of impartiality.  *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865 (1988).  The *Liljeberg* case involved a bench trial where the Judge Robert Collins found in favor of John Liljeberg concerning the ownership of a corporation at a time when Judge Collins simultaneously sat on the Board of Trustees for Loyola University, which was in the midst of negotiations with *Liljeberg* to purchase land to build a hospital.  *Id*.  The *Liljeberg* decision set out three factors for courts to consider when determining whether a judge's failure to recuse himself was harmless error:

(1)      the risk of injustice to the parties in a particular case;

(2)      the risk that the denial of relief will produce injustice in other cases; and

(3)      the risk of undermining the public's confidence in the judicial process.

*Id.* at 864.

The Seventh Circuit has decided three cases involving Judge Bruce and the appearance of bias, which are particularly relevant to Petitioner's motion.  See *United States v. Atwood*, 941 F.3d 883 (7th Cir. 2019); *United States v. Williams*, 949 F.3d 1056 (7th Cir.  2020); *United States v. Orr*, 2020 WL 4582197 (7th Cir. 2020).   In *Atwood*, the defendant pled guilty and Judge Bruce sentenced him.  In *Williams*, the defendant was found guilty by a jury and was sentenced by another judge.  In each case, the court found Judge Bruce's conduct to be a violation of the recusal statute and applied the *Liljeberg* factors to determine whether harmless error existed.  In *Atwood*, the court determined the error was not harmless and remanded the case back for resentencing before a different judge.  In *Williams*, the Seventh Circuit found harmless error and affirmed the conviction and sentencing.  In *Orr*, the Seventh Circuit vacated a conviction and sentence due after finding Judge Bruce exercised substantial discretion over the matter.

Petitioner in this case pled guilty on September 27, 2016, after which Judge Bruce sentenced him on January 9, 2017.  Based on *Atwood*, at a minimum, this case should be set for re-sentencing.  Based on *Orr*, since Judge Bruce exercised substantial discretion in this case, Petitioner is entitled to have his conviction vacated and set for a new trial.

In *Atwood*, the Seventh Circuit concluded that the appearance of bias required Judge Bruce to recuse himself at a sentencing hearing that took place before the emails were disclosed. 941 F.3d 883, 884–86 (7th Cir. 2019). The Seventh Circuit also found that Judge Bruce's failure to recuse himself was not harmless.   "The federal recusal statute requires a judge to recuse himself from 'any proceeding in which his impartiality might reasonable be questioned.'" *Atwood*, 941 F.3d at 885 (quoting 18 U.S.C. § 455(a)). In *Atwood* the government conceded Judge Bruce's conduct in engaging in extensive *ex parte* communications with the USAO

created an appearance of bias in the government's favor requiring Judge Bruce to recuse himself but argued the error was harmless. *Id*. The *Atwood* court applied the Liljeberg factors and found that Judge Bruce was required to recuse himself and his failure to do so was not harmless. *Id*.

In *Atwood*, as to the first factor of fairness to the litigants, the court found the open-endedness of the § 3553(a) factors leave ample room for a court to exercise its discretion, and discretion is the key concern when it comes to appearance of bias. *Id*. There is a real risk to the defendant that a judge's biases will influence or appear to influence the sentence he imposes, because he has such broad discretion to select the sentence. *Id*. Conversely, there is little risk of unfairness to the government in ordering a resentencing. *Id*.  As to the second *Liljeberg* factor, the court found that enforcing the recusal statute may prevent a substantive injustice in some future case by encouraging judges to exercise caution in their communications. 941 F.3d at 885. Finally, the third factor, which concerns the public's confidence in the judicial process, the court found that when fashioning a sentence the most significant restriction on a judge's ample discretion is the judge's own sense of equity and good judgment. *Atwood*, 941 F.3d at 886. When those qualities appear to be compromised, the public has little reason to trust the integrity of the resulting sentence. *Id*.

In *Orr*, the government conceded that "Judge Bruce's conduct violated [28 U.S.C. §455(a)] …but argued "that any error was harmless."  *United States v. Orr*, 2020 WL 4582197 (7th Cir. 2020).  To determine whether Judge Bruce's violation was harmless, the *Orr* Court considered the *Liljeberg* factors.  *Id.* at 4.  In doing so, the *Orr* Court pointed out three discretionary decisions made by Judge Bruce.  *Id.* at 5.  First, the *Orr* Court determined that Judge Bruce's denial of a Motion to Suppress was not a close discretionary call.  *Id.*  However,

the *Orr* Court determined two trial decisions were. *Id.* at 5-6. *Orr* was distinguished from *Williams*, in that the Court found the *Williams* pre-trial and trial rulings to be routine. *Id.* at 6.

In *Williams*, the government again "concede[d] that there [was] a statutory violation; [that] a reasonable person might question Judge Bruce's impartiality based on the post-judgment disclosure of the communications between him and the [United States Attorney's] Office." *Williams*, which was decided after *Atwood*, received a different outcome. The Seventh Circuit noted it "recently decided one case regarding the implications of Judge Bruce's communications." *Id.* The *Williams* court distinguished its case saying "a key difference exists between this case and *Atwood*. In *Atwood*, the defendant entered a guilty plea, and ***Judge Bruce presided over his sentencing hearing***. In *Williams*, he pleaded not guilty, and a jury found him guilty. Moreover, Judge Bruce did not preside over *Williams's* sentencing hearing. This distinction matters because judges generally have more discretion over sentencing than the outcome of a jury trial." *Id.*

The *Williams* court applied the three *Liljeberg* factors, as they did in *Atwood*, but this time came up to a different conclusion. *Id.* First, they looked at the risk of injustice to *both* parties. As to *Williams*, none of the unearthed communications had to do with *Williams* specifically, a jury made the determination of *Williams's* guilt, Judge Bruce made minimal rulings before and during trial and *Williams* did not argue that any of the rulings against him were prejudicial. *Id.* The court found that Judge Bruce "equally granted and denied objections from both parties." *Id.* As to the government, the cost of a retrial posed a significant risk of injustice, according the *Williams* court. *Id.* As to the second factor, the Williams court pointed to the public reprimanding of Judge Bruce and that he claimed to have changed his practices in

response to the Judicial Council inquiry. *Id.* As to the third factor, the Williams court failed to find Judge Bruce's discretionary rulings did not have a significant impact on the outcome. *Id.*

As indicated above, the government has already conceded Judge Bruce's *ex parte* communications created an appearance of bias requiring him to recuse himself under 18 U.S.C. § 455(a). Petitioner's case is similar to *Atwood* in that Judge Bruce presided over his sentencing. Petitioner's case is similar to *Orr* in that Judge Bruce exercised substantial discretion over the matter. The Seventh Circuit found that to be the "key difference" in determining *Atwood* and *Orr*. As such, Petitioner's case can clearly be distinguished from *Williams*.

Application of the *Liljeberg* factors further distinguishes Petitioner's case from *Williams*. Petitioner sets forth each of these factors below, all of which weigh in his favor.

### 1. *Risk of injustice to both parties*

This factor weighs heavily in favor of Petitioner. Just as in *Atwood*, Judge Bruce calculated Petitioner's sentence based on the factors outlined in 18 U.S.C. § 3553(a). The Seventh Circuit in *Atwood* quoted "[t]he open-endedness of the § 3553 factors leaves ample room for the court's discretion." *United States v. Warner*, 792 F.3d 847, 855 (7th Cir. 2015). That discretion invites the risk that a judge's personal biases will influence or appear to influence the sentence he imposes. See *United States v. Smith*, 775 F.3d 879, 882 (7th Cir. 2015).

Reading the *Atwood* and *Williams* decisions together makes clear that the Seventh Circuit has found upholding a sentence handed down by a judge "whose conduct gave the appearance he was bias" also "creates a real risk of unfairness to" the Petitioner. *Atwood*, 941 F.3d 883, 885.

Unlike in in *Williams*, Petitioner contends Judge Bruce made discretionary rules in favor of the government that were prejudicial to him. In this case, Judge Bruce exercised his discretion at Petitioner's sentencing hearing, as set forth above.

The potential unfairness to the government is significantly less than that to Petitioner. Petitioner points out the government participated in the *ex parte* communications. There has been no evidence made available to Petitioner of systematic attempts by the government to stop these communications to ensure fairness to Petitioner and others like him. Rather, the content of the emails suggests the *ex parte* communications were welcomed and enjoyed. For example, Judge Bruce sent private emails during the course of pending cases to Ms. Klayer ("everything will be fine") and Ms. Person ("My bad. You're doing fine. Let's get this thing done"). According to the Special Committee Report, "Judge Bruce explained during the hearing that his comment was intended only to comfort Ms. Peirson." A judge must stand as a neutral arbitrator over an adversarial process. Providing aid and comfort to one side offers a benefit at the expense of the other.

### 2. *Risk of injustice to other parties*

This factor weighs in favor of Petitioner. Of note is how the Seventh Circuit treated this factor differently in *Atwood* and *Williams*. This appears to be due to the fact that Judge Bruce sentenced *Atwood* but did not sentence *Williams*. In *Atwood*, the Seventh Circuit sated "enforcing § 455(a)…'may prevent a substantive injustice in some future case'" *Atwood*, 941 F.3d 883, 885. While discussing the very same factor in Williams, the Seventh Circuit pointed to the public reprimand and that Judge Bruce claimed he changed certain practices. Since Petitioner was sentenced by Judge Bruce, this court should adopt the Atwood analysis on this factor. As such, it weighs in favor of Petitioner.

### 3. *Risk of undermining the public's confidence*

This factor weighs in favor of Petitioner. The Atwood court stated "the most significant restriction on a judge's ample discretion is the judge's own sense of equity and good judgment."

*Atwood*, 941 F.3d 883, 886.  "When those qualities appear to be compromised, the public has little reason to trust the integrity of the resulting sentence."  *Id*.

## VI. PETITIONER'S CLAIMS ARE COGNIZABLE UNDER § 2255

A conviction and sentences may be changed, postconviction, if the conviction or sentence "was imposed in violation of the Constitution or laws of the United States, or [if] the court was without jurisdiction to impose such sentence, or [if] the sentence was in excess of the maximum authorized by law…" 28 U.S.C. § 2255(a).  Although, "not every error is corrigible in a post-conviction proceeding, even if the error is not harmless."  Hawkins v. United States, 706 F.3d 820, 823 (7th. Cir. 2013).  Even errors that are not harmless may not be cognizable under a § 2255 proceeding.  *Id*.  The Seventh Circuit has held that "relief under § 2255 is available 'only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice.'"  *United States v. Coleman*, 763 F.3d 706,708 (7th Cir. 2014)(quoting *Blake v. United States*, 723 F.3d 870, 878-79(7th. Cir. 2013)).  The Seventh Circuit concluded in Atwood, that "[a]llowing Atwood's sentence to stand would undermine the public's confidence in the fairness of this sentence and in the impartiality of the judiciary."  *Atwood*, 941 F.3d at 886.  There is little difference between a finding of "miscarriage of justice" and a result that "would undermine the public's confidence in the fairness of this sentence."  Petitioner asserts they are one of the same.  Accordingly, Petitioner's claims are cognizable under § 2255.

## VII. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner alleges the Federal Public Defender's Office provided him ineffective assistance of counsel.   The Sixth Amendment guarantees criminal defendants effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 684-86 (1984). Under *Strickland's* familiar two-part test, Petitioner must show both that his attorney's performance was deficient and that he was prejudiced as a result. *Vinyard v. United States*, 804 F.3d 1218, 1225 (7th Cir. 2015). To show prejudice, a prisoner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Absent a sufficient showing of both cause and prejudice, a petitioner's claim must fail. *United States v. Delgado*, 936 F.2d 303, 311 (7th Cir. 1991). An ineffective assistance claim can overcome an argument that a 2255 claim is procedurally defaulted. *See* Galbraith v. United States, 313 F.3d 1001, 1007 (7th Cir. 2002) ("[I]t is generally proper to raise arguments of ineffective assistance of counsel for the first time on collateral review in a § 2255 petition because such claims usually... involve evidence outside the record.").

Petitioner points to the Seventh Circuit's ruling in *Atwood*.  Petitioner is in a similar position to others who also seek the same relief.  For those Petitioners who filed direct appeals before any of Judge Bruce's *ex parte* communications were revealed in Nixon, such Petitioner's would have had no means to discover the potential claim.

Once the *Nixon* only emails were revealed through a newspaper article, Petitioner's still would not have been able to fully appreciate the full scope of the *ex parte* communications. Again, any Petitioners who filed a direct appeal during this time period still would not have been fully aware of the potential claim to raise in their appeal.

23

When the United States filed emails in the *Nixon* case, as referenced above, there was some public awareness of the full scope.  However, even then, the *Nixon* filing did not include all the *ex parte* communications.  Some Petitioners even received letters from the United States Attorney's Office containing that office's summary view of the emails.  The Federal Public Defender's Office was ineffective for failing to include claims in direct appeals once the full scope of the *ex parte* communications was revealed.

Further, the Federal Public Defender's Office was ineffective in failing to properly secure the tolling agreements.  As indicated above, the Federal Public Defenders Office did not secure a tolling agreement for claims of appearance of bias, rather it limited the tolling agreement to a finite list of former clients for claims of actual bias only.  Petitioner was not on that list.  When all of Judge Bruce's *ex parte* communications are viewed in totality, Judge Bruce was actually bias against this Petitioner.  Accordingly, the Federal Public defender's Office should have included Petitioner on the list of former clients subject to the tolling agreement.  Failing to do so was clearly ineffective.  Failing to secure a tolling agreement for appearance of bias was ineffective.

## VIII. REQUEST FOR CERTIFICATE OF APPEALABILITY

Petitioner has made a substantial showing of the denial of a constitutional right.  In the event Petitioner's request is denied, Petitioner respectfully requests a certificate of appealability.

## IX. CONCLUSION

Judge Bruce was actually biased against Petitioner.  Actual bias is a due process violation.  Petitioner's conviction and sentence should be vacated and the matter should be scheduled for a new trial.  In the alternative, based on *Atwood*, Petitioner's sentence should be vacated and the matter scheduled for re-sentencing.

WHEREFORE, Petitioner AUSTIN A. BURNS, respectfully requests that this Court enter an Order consistent with his motion, and for all other relief that is just and proper.

Respectfully submitted,

By: /s/ Charles G. Schierer
Charles G. Schierer ARDC# 6271701
Schierer & Ritchie, LLC.
1009 Illini Drive
East Peoria, IL 61611
(T) 309-839-2024
(F) 309-517-5856
(E) chuck@srtriallawyers.com

Attorney for AUSTIN A. BURNS

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2020, I electronically filed this **MOTION TO VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants.

/s/ Charles G. Schierer
Charles G. Schierer ARDC# 6271701
Schierer & Ritchie, LLC.
1009 Illini Drive
East Peoria, IL 61611
(T) 309-839-2024
(F) 309-517-5856
(E) chuck@srtriallawyers.com