<pre>
 1                UNITED STATES DISTRICT COURT
                  CENTRAL DISTRICT OF ILLINOIS
 2                      URBANA DIVISION

 3   UNITED STATES OF AMERICA,  )
                                )  Case Number 14-20050
 4                 Plaintiff,   )
                                )
 5        vs.                   )
                                )  January 25, 2016
 6                              )  11:00 a.m.
     AUSTIN A. BURNS,           )
 7                              )
                   Defendant.   )
 8

 9                    SENTENCING HEARING

10
                 BEFORE THE HONORABLE COLIN S. BRUCE
11                  United States District Judge

12

13   A P P E A R A N C E S :

14   For the Plaintiff:    ELLY M. PEIRSON, ESQUIRE
                           Assistant United States Attorney
15                         201 South Vine Street
                           Urbana, Illinois 61802
16                         217-373-5875
                           elly.peirson@usdoj.gov
17
     For the Defendant:    ELISABETH R. POLLOCK, ESQUIRE
18                         Assistant Federal Defender
                           300 West Main Street
19                         Urbana, Illinois 61801
                           217-373-0666
20                         elisabeth_pollock@fd.org

21

22
     Court Reporter:       LISA KNIGHT COSIMINI, RMR-CRR
23                         U.S. District Court
                           201 South Vine
24                         Urbana, Illinois 61802

25   Proceedings recorded by mechanical stenography;
     transcript produced by computer.
</pre>

```
 1                (In open court, 11:00 a.m.)
 2           COURTROOM DEPUTY:  This is in Case Number
 3   14-20050, United States of America versus Austin A.
 4   Burns.
 5           THE COURT:  The United States is
 6   represented by Elham M. Peirson.
 7           The defendant is represented by Elisabeth
 8   Regine Pollock.  The defendant is in custody.  He is
 9   personally present.
10           The probation officer present is Alex
11   Morris, the author of the presentence report.
12           The Court also recognizes family or friends
13   of the defendant present here in the courtroom.
14           Mrs. Peirson, has the government had a
15   chance to receive and review the revised presentence
16   report?
17           MS. PEIRSON:  We have, Your Honor.
18           THE COURT:  And I believe --
19           MS. PEIRSON:  We have no objections.
20           THE COURT:  -- there were no objections by
21   the United States.  All right, thank you for jumping
22   ahead of my next question.
23           And there is no sentencing commentary filed
24   by the United States, correct?
25           MS. PEIRSON:  No, Your Honor.  Our only
```

```
 1   commentary was to Ms. Pollock's original sentencing
 2   commentary that she filed, I believe, last Thursday.
 3   I contacted Ms. Pollock and told her what I'd be
 4   filing, and then she filed a supplemental sentencing
 5   commentary.  So that's the only --
 6              THE COURT:  All right.
 7              MS. PEIRSON:  -- correction we have.
 8              THE COURT:  Do you have any evidence you
 9   intend to present in aggravation?
10              MS. PEIRSON:  No, Your Honor.  I spoke to
11   the father of the victim in this case.  He was
12   initially quite angry and quite involved in the
13   case.  His daughter has, has since done a lot
14   better.  It's been a couple years since this case
15   started.  Their family wanted to kind of just move
16   on and not, kind of, dredge up all these old
17   emotions.  So they will not be here today.  They did
18   not want to submit a victim impact statement, which
19   is their right not to do.
20              The case agent is present in the courtroom
21   if you have any additional questions for him.
22              THE COURT:  No.  That's -- you answered my
23   next question about a victim/witness impact
24   statement, so you're two for two jumping ahead of my
25   questions for me correctly.
```

1          MS. PEIRSON:  Sorry.

2          THE COURT:  Good job.

3          Over to you, Mrs. Pollock.  Have you had a

4   chance to receive and review the revised presentence

5   report?

6          MS. POLLOCK:  I did.

7          THE COURT:  Have you had a chance to review

8   it with your client?

9          MS. POLLOCK:  Mr. Burns did not receive the

10  revised presentence report, I believe, until

11  yesterday.  I don't know if that is a hiccup with

12  the mail at the Macon County Jail or what is going

13  on.

14         That being said, before court began, I did

15  talk to him about the changes that were made.  I

16  also talked to him on Friday afternoon by telephone,

17  reviewing the changes that had been made between the

18  revised PSR and the initial PSR.

19         Just for the Court's summary, we filed one

20  substantive objection to the presentence report,

21  which was to challenge the use of a computer

22  enhancement in paragraph 23, not on the basis that

23  it doesn't technically apply by the language of the

24  guideline but, rather, that it's such a pervasive

25  thing in these type of cases that we feel it

 1   shouldn't apply overall.  It's more of a double

 2   enhancement than anything else.  That was not

 3   changed between the initial and the revised

 4   presentence report.

 5          The other changes that we had were merely

 6   corrections.  One was to his residence address on

 7   page 2.  And the others were to the justification

 8   language in the proposed conditions of supervised

 9   release.  There were some misstatements in those

10   conditions.  I believe it was just left over from a

11   previous presentence report for a different

12   defendant.  Those changes were made.  The

13   corrections were made.  The errors were removed.

14          And now the revised report does have the

15   appropriate conditions as agreed upon, and we have

16   no objections to the imposition of those conditions

17   of supervised release.

18          THE COURT:  And you've had between Friday

19   by phone, as well as sufficient time this morning --

20   you've had a chance to make sure that Mr. Burns

21   understands all those changes and what's in the

22   revised presentence report, correct?

23          MS. POLLOCK:  That's correct.

24          THE COURT:  All right.  Now, I've read your

25   sentencing memorandum and then the next day the --

```
 1   let's call it the addendum, the change you
 2   acknowledged, the mandatory minimum.  And you only
 3   had the one objection remaining, which was to the
 4   two-level enhancement, correct?
 5           MS. POLLOCK:  That's correct, Your Honor.
 6           THE COURT:  And your thought is it's
 7   technically correct; you just don't think -- you
 8   just don't like that enhancement, period.  Correct?
 9           MS. POLLOCK:  Correct.
10           THE COURT:  But it's technically correct.
11           MS. POLLOCK:  That's correct.
12           THE COURT:  All right.  And I am also --
13   will acknowledge that I read the letters that were
14   attached to your original sentencing memorandum
15   filed on the 21st.
16           For my own edification, why are those
17   sealed?
18           MS. POLLOCK:  Your Honor, the memorandum
19   was sealed because it discussed cooperation; and
20   because whenever anything talks about a cooperation
21   agreement, I find it better not to be a public
22   record in case it gets loose in the Bureau of
23   Prisons and somebody gets ahold of it and decides
24   they want to take that out on him.
25           THE COURT:  All right.  You know if it goes
```

 1  up on appeal, they're going to require me to unseal

 2  it.

 3          MS. POLLOCK:  I understand that, Your

 4  Honor.  We also have an appeal waiver.

 5          THE COURT:  I'm just saying.

 6          Do you have any evidence you wish to

 7  present in mitigation?

 8          MS. POLLOCK:  None other than what's been

 9  presented.

10          THE COURT:  All right.  Mr. Burns, you've

11  had a chance to receive and review the revised

12  presentence report, correct?

13          DEFENDANT BURNS:  Yes, Your Honor.

14          THE COURT:  All right.  And you heard Mrs.

15  Pollock talk about talking to you on Friday,

16  correct?

17          DEFENDANT BURNS:  Correct.

18          THE COURT:  And then she talked to you this

19  morning before we started court, correct?

20          DEFENDANT BURNS:  Correct.

21          THE COURT:  So you understand what's in the

22  revised presentence report, --

23          DEFENDANT BURNS:  Yes, Your Honor.

24          THE COURT:  -- correct?  Okay.

25          You had a chance to discuss all that with

1   your attorney?

2          DEFENDANT BURNS:  Yes, Your Honor.

3          THE COURT:  Now, she says that there's

4   one -- she has one -- I'll call it a technical

5   objection.  She doesn't like the fact that there's a

6   two-level increase in offense level for the use of a

7   computer.  She understands that it applies; it's

8   correct.  But she just doesn't like it.

9          Do you understand that?

10         DEFENDANT BURNS:  Yes, Your Honor.

11         THE COURT:  Okay.  Other than that

12  objection, do you have any objections of your own?

13         DEFENDANT BURNS:  No, Your Honor.

14         THE COURT:  Okay.  All right, so as far as

15  the objection goes, Mrs. Pollock, I think you've

16  acknowledged it, it does apply.  Your objection can

17  be noted for the record.  Beyond that, I don't know

18  what you wish me to do to make a record.

19         MS. POLLOCK:  Nothing, Your Honor.  That's

20  it.  We would be arguing it in the next portion of

21  the hearing, --

22         THE COURT:  Okay.

23         MS. POLLOCK:  -- that it should result in a

24  potentially lower sentence for Mr. Burns.

25         THE COURT:  All right.  So as to the

objection, that Court finds that the objection is
overruled; that the two-level enhancement should
apply.  Technically, it is correct; it did involve a
computer.

All right.  Therefore, adopting that
position, I hereby adopt the revised presentence
report and all of its findings contained therein.
This results in an applicable adjusted offense level
of 35; a criminal history category of V.

The applicable resulting sentencing
guideline imprisonment range is 300 to 327 months;
supervised release of five years to life; the
defendant is not eligible for probation; there is a
fine of 20,000 to $200,000; no restitution; and a
$100 special assessment.

Mrs. Peirson, have I correctly stated the
sentencing guidelines' advisory positions?

MS. PEIRSON:  Yes, Your Honor.

THE COURT:  Mrs. Pollock, do you agree?

MS. POLLOCK:  Yes, Your Honor.

THE COURT:  All right.  Statutorily, there
is a mandatory minimum 25-year term of imprisonment
up to a maximum 50-year term of imprisonment, but
the mandatory minimum is 25 years by statute; there
is a five-year term of supervised release up to

1    life, so mandatory minimum five to life; the

2    defendant not eligible for probation; a fine of up

3    to $250,000; no restitution; and a $100 special

4    assessment.

5              Have I correctly stated the statutory

6    range, Mrs. Peirson?

7              MS. PEIRSON:  Yes, Your Honor.

8              THE COURT:  Mrs. Pollock, --

9              MS. POLLOCK:  Yes, Your Honor.

10             THE COURT:  -- do you agree?  All right.

11             So is the government going to make any kind

12   of downward departure motion?

13             MS. PEIRSON:  Yes, Your Honor.

14             THE COURT:  Oh, okay.  Then I'll take the

15   government's recommendation at this time.

16             MS. PEIRSON:  Your Honor, the defendant in

17   this case pled guilty pursuant to a cooperation

18   plea.  And I'll note for the record that there's

19   only court personnel in the courtroom, a member from

20   my office, the case agent, and the defendant's

21   family in the courtroom.

22             He -- this is an atypical cooperation

23   scenario.  Unlike in a drug conspiracy where you can

24   identify other individuals involved in criminal

25   activity and assist law enforcement, in this case,

1    this defendant, like so many child pornography type

2    offenders, acted alone.  But he did provide

3    information that was materially -- materially

4    assisted the government.

5            He -- let me start with the nature of the

6    crime itself.  This is a defendant -- and I know the

7    Court has read the PSR; the facts are in there.  He

8    began chatting with a 13-year-old girl via Kik

9    Messenger.  He obtained initially somewhat innocuous

10   photographs of her that would have resulted in great

11   embarrassment to her if they were distributed.  He

12   used those as bait to extort more graphic images of

13   her and required that she commit sexual acts in

14   these videos and send them to him continuously.

15           She became depressed.  She became suicidal.

16   She finally disclosed the information to her

17   parents, who then turned it over to the police.

18           Mr. Burns was on probation out of South

19   Dakota for a similar type offense at the time he

20   committed this one.  When the agents obtained his

21   media, they found numerous other children that he

22   was communicating with -- or numerous other

23   individuals that he was communicating with, some of

24   them they believed to be minors.

25           Mr. Burns sat down for a full proffer

```
 1   agreement -- a full proffer interview with the

 2   agent.  He did identify a number of individuals

 3   who -- or gave the information he had to identify

 4   them.  One of them was identified.  The agents were

 5   able to send information through the Department of

 6   Homeland Security to help identify that minor and

 7   give some closure to that family.  And that minor,

 8   like the one in this case, was able to be provided

 9   therapy and treatment and closure that the person

10   who had been threatening them online -- or chatting

11   with them online -- is no longer going to be able to

12   do that.

13         That's valuable to the government.  It's

14   not traditional cooperation by any means, but it

15   provides the government with one of its purposes;

16   and one of its missions is to end sexual

17   exploitation of children, to identify these

18   children, provide them education and outreach

19   programs, and to assist their families in

20   rebuilding.  And Mr. Burns was helpful in that

21   regard.

22         From the agent's perspective, he was

23   truthful.  He was cooperative.  He was forthcoming.

24   He did not minimize his own conduct.  He did not put

25   blame on the victim or exaggerate their conduct.
```

 1   And, again, while it didn't result in the direct
 2   prosecution of other individuals, it did provide the
 3   Department of Homeland Security with important
 4   intelligence-level information to advance the fight
 5   against child exploitation.
 6          So, based on our district's guidelines, he
 7   qualifies for a 10 percent departure from the low
 8   end of the guideline range, and the government's
 9   recommendation is 270 months in this case.
10               (Brief pause in proceedings.)
11          MS. PEIRSON:  And, Your Honor, I do have a
12   comment on the use of computer enhancement if the
13   Court would like to hear on that, unless that's not
14   an issue.  I mean, it doesn't make that much of a
15   difference because of the mandatory minimum, but I
16   can address that if the Court would like me to.
17          THE COURT:  You can feel free to address
18   it.  In this case, it doesn't really have that much
19   of an impact.
20          MS. PEIRSON:  The --
21          THE COURT:  There's a mandatory minimum, so
22   it's 300 months.
23          MS. PEIRSON:  Right.  It doesn't matter.
24          I just, I just point out to the Court that
25   the majority of the criticism on that particular

 1    enhancement applies to 2G2.2 calculations.  This is

 2    a 2G2.1 calculation.

 3           And obviously, as the Court knows from its

 4    own experience, sexual exploitation of a minor can

 5    be done with a camera.  It can be done with a cell

 6    phone.  It doesn't have to be done through the use

 7    of computer, and so I think it's applicable in this

 8    case.

 9           THE COURT:  I understand.

10           All right, thank you, Mrs. Peirson.

11           Mrs. Pollock.

12           MS. POLLOCK:  Thank you, Your Honor.

13           This is one of the sadder and more

14    difficult cases that I've ever had to litigate.

15    This gentleman here is 21 years old; and when the

16    conduct occurred, he was 19 years old, which is

17    not -- I mean, I know that when you look at the

18    definition of a minor, under 18, that's -- it's --

19    that's what it is, per se; she's a minor.  The age

20    difference was five and then six years, which is not

21    all that great compared to some of the other people

22    we see in here who are in their 50s and 60s who are

23    committing these offenses against 12- to 14-year-old

24    children.

25           That being said, you know, his exposure

 1   without the mandatory minimum in this case -- he was

 2   enhanced by virtue of that South Dakota conviction

 3   that happened when he was 18 years old and received

 4   a sentence of probation from the South Dakota Court,

 5   which is -- you know, as we see -- we understand

 6   these mandatory minimums because we're in this

 7   courthouse every day, and we see them all the time.

 8           But for a lay person and a family member

 9   to, to see someone get probation for an offense in

10   one vein and then four months later look at 25 years

11   is quite a hard pill to swallow, especially when the

12   person is so young.

13           And one of the things I noted when I was

14   reviewing the presentence report is that Mr.

15   Burns -- you know, he, he also received the

16   guideline enhancement under 4B1.5, which made him a

17   Category V offender.  And if you look at -- it

18   didn't matter because he was a Category V anyway

19   based on points, but eight of those points came from

20   when he was 14 and 15 years old.

21           So it's just -- it's just a sad case

22   overall when somebody like this has experienced the

23   type of childhood that he has and then goes on, and

24   now we're looking at 25 years of imprisonment.

25           And Ms. Peirson accurately stated the

1   nature of his cooperation.  We are grateful to the

2   government for even giving us the opportunity to do

3   so in this case because it's atypical.  But I think

4   that Ms. Peirson recognized that the mandatory

5   minimum of 25 years for somebody who's 20 years

6   old -- you know, he's looking at more time in the

7   Bureau of Prisons than he's ever been alive, and

8   that is not necessarily something that, that

9   comports with our view of what an appropriate

10   sentence is.

11         And so, you know, Mr. Burns did everything

12   he possibly could, given the limited exposure that

13   he has.  You know, he is a young person.  He was a

14   teenager when this happened.  He was not involved in

15   any other types of offenses where he could have

16   rendered information about third parties.  He did

17   everything he possibly could.  And so we understand

18   what the district's guidelines are in terms of the

19   value of cooperation.  He maximized to every

20   possible avenue what he could do for that

21   cooperation.

22         And given the nature of the mandatory

23   minimum, we'd request a further departure from the

24   Court and a sentence below that mandatory minimum

25   that is more appropriate for a person in Mr. Burns'

```
 1  situation.
 2          Thank you.
 3          THE COURT:  Do you have a number?
 4          MS. POLLOCK:  Well, we had initially
 5  requested 15 years.  That was based on an erroneous
 6  application of 3553(a) factors.
 7          The defendant believes the Court can still
 8  consider 3553(a) overall in terms of fashioning an
 9  appropriate sentence; but in terms of the variants
10  from the mandatory minimum, the Court is limited to
11  the cooperation.
12          We requested 15 years.  That is what the
13  mandatory minimum would have been if he had not been
14  subjected to the enhancement, and that is the
15  sentence that we request.
16          THE COURT:  Mr. Burns, you have the right
17  to allocution; that is, the right to make a
18  statement to me before I impose sentence.  You don't
19  have to do so.  I make sure people know that.  You
20  don't have to.  If you want to, come up here to the
21  podium with Mrs. Pollock, and you can talk to me.
22  You can read something to me.  But you don't have
23  to.  If you want to talk to her before you make a
24  decision, that's fine, too.
25                  (Brief pause in proceedings.)
```

```
 1              DEFENDANT BURNS:  First and foremost, I
 2    want to apologize to all the parties involved.  I'm
 3    truly sorry for my actions.  I never thought anyone
 4    could be hurt by my actions, but I was wrong.  I
 5    hurt more people than I could ever realize.  I never
 6    thought of who I was hurting.  All I thought about
 7    was myself.
 8              Growing up, I never had friends, so I felt
 9    like I didn't belong.  Then I found social media,
10    and text messages or online I was able to have the
11    confidence I never had in real life.  Online, I was
12    able to talk freely and express how I truly felt.
13    In real life, I was never able to go up to anyone
14    and start a conversation, so social media gave me an
15    outlet to be normal.
16              In my previous case, I received probation;
17    so there was no way I could have known I would be
18    facing 25 to 50 years for something I got probation
19    for.
20              I am truly sorry.  I was 19 years old when
21    I committed this crime.  I was a kid, and I'm still
22    a kid.  I have my whole life to live, and I can't
23    afford to throw it away.
24              I plan to go back to school and make a
25    career and have a family.
```

1          I am so sorry for being an embarrassment to

2    my family.

3          During my year and a half I've been

4    arrested, I've grown and realized the errors of my

5    ways.  I'll do whatever it takes to correct the

6    errors of my ways and learn from my mistakes so I

7    don't throw away the rest of my life.

8          I am truly and deeply sorry for all the

9    hurt my actions have caused.

10          THE COURT:  Thank you.

11          Well, let me get the formal stuff out of

12    the way.  I am taking the sentencing guidelines into

13    account on an advisory basis.  I'm also applying the

14    factors as set forth in Section 3553(a) and, in this

15    case, Section 3553(e).  I understand and believe

16    that the sentence I am imposing is sufficient and

17    not greater than necessary to comply with both the

18    sentencing guidelines and the Section 3553(a) and

19    (e) factors.

20          Mr. Burns, this is a bad situation for

21    everybody.  I read your presentence report.  You

22    were in a very bad situation growing up.  You have

23    been in trouble before.  I understand -- you know,

24    Mrs. Pollock made a very good point when she said

25    you commit one offense in South Dakota, and you get

```
 1    probation; and then a short time later you're in
 2    Federal Court, and you're facing a mandatory minimum
 3    25 years.
 4            Just so we're clear, unless there is a
 5    downward departure by the government, which in this
 6    case there was, I can't go below that 25 years.  At
 7    this point -- and for the record, I granted the
 8    government's motion pursuant to 18 USC Section
 9    3553(e) and United States Sentencing Guidelines
10    Section 5K1.1 for a downward, or a departure and/or
11    deviation.
12            Even with that being -- so if they had --
13    if, if there had been no cooperation, I'd be stuck
14    with 25 years.  I could have gone higher than 25.
15    But, realistically, I think everybody in this
16    courtroom thought 25 years was not only sufficient;
17    it was a lot.  Unfortunately for you, you know,
18    you've made these choices, and you put yourself
19    there; and there's not a lot that anyone can do to
20    alter that.
21            And Mrs. Peirson points out that your
22    cooperation was basically because you were doing
23    this type of exploitation of children to other
24    people as well.  I'm not happy to hear that.  I
25    mean, that's bad.  You're damaging permanently,
```

1  perhaps, young women.  They have a hard enough time

2  as it is.  They don't need people like you

3  exploiting them.

4       Your attorney correctly pointed out in her

5  supplemental pleading that once I grant that Section

6  3553(e) motion, I shouldn't -- you know, some courts

7  will play games with that.  I don't, I don't believe

8  in that.  I take the government -- Mrs. Peirson

9  knows what she's doing.  I take the government at

10 their word as to what the value was.  It's not for

11 me to second-guess that.

12       Let me add something.  When I asked her if

13 there was going to be a downward departure motion, I

14 expected her to say no.  I think the number of cases

15 involving child pornography where there is a single

16 defendant involving cooperation, of which I am aware

17 out of the Urbana Division of the U.S. Attorney's

18 Office, I can probably count on -- two hands might

19 be one hand too many.

20       You know, if we have a multi-defendant

21 case, some defendants can turn on the others.

22       Or if you have a case involving a lot of

23 pornography and a single defendant but he's part of

24 a larger group, like -- like a GigaTribe situation

25 where he gives up his identity to the agents.

1          But that wasn't your situation.  So I was,

2    frankly, a little shocked when Mrs. Peirson agreed

3    to make a downward departure motion.  I'm going to

4    grant that because it sounds like, from what she

5    said, that even though you engaged in other conduct

6    that was really -- well, I'm not going to sugarcoat

7    it.  It was horrific.  You don't do that to another

8    human being, especially not a young girl.  That's

9    really bad.

10          But you know, I think when you -- when

11   reality hit you like a freight train, you tried to

12   take the advantage of the opportunity before you to

13   cooperate, and you cooperated to the best extent

14   possible.  Mrs. Peirson related that the case agent

15   believes that you did everything that you could,

16   that you were cooperative to the greatest extent you

17   could.  So I'm going to reward you for that.

18          I'm not going to second-guess the

19   government.  They said your sentence should drop

20   from 25 years down to -- which is 300 months -- down

21   to 270 months.  I'm going to allow that.  That's

22   what I'm going to sentence you to.

23          I want you to understand that even that's a

24   big break.  Do you understand?

25          DEFENDANT BURNS:  Yes, Your Honor.

```
 1              THE COURT:  I mean, that's a lot of time
 2   for someone as young as you to be sitting in prison.
 3   But Mrs. Pollock didn't put you there.  Mrs. Peirson
 4   didn't put you there.  I didn't put you there.  You
 5   engaged in conduct that Congress really, really
 6   doesn't like.
 7              Do you understand?
 8              DEFENDANT BURNS:  Yes, Your Honor.
 9              THE COURT:  Okay.  There's a mandatory
10   five-year-to-life term of supervised release.  I
11   think five years is sufficient.
12              Mrs. Pollock, as far as the terms contained
13   within the presentence report, the terms of
14   supervised release, did you have any objection --
15   you or your client have any objection to any of
16   those?
17              MS. POLLOCK:  No.
18              THE COURT:  Did you review them with your
19   client?
20              MS. POLLOCK:  Yes.  And we actually made
21   one objection, and one proposed condition was
22   removed.
23              THE COURT:  Are there any -- I'm just
24   asking this for the record.  Are there any words or
25   phrases which would cause you -- or your boss,
```

```
 1   Mr. Patton -- confusion or concern that using what I
 2   would call reasonable common sense could not be
 3   understood?
 4            MS. POLLOCK:  Not that I'm aware of.
 5            THE COURT:  Okay.
 6               (Brief pause in proceedings.)
 7            MS. PEIRSON:  And, Your Honor, just so you
 8   know, they're also incorporated into the plea
 9   agreement; and the parties agree that they're well
10   defined and understood.
11            THE COURT:  Yes.  And that's recently been
12   challenged as well by Mr. Patton's office.  And I'm
13   not attributing that to Mrs. Pollock.  It just got
14   appealed about a week ago, a case out of a different
15   division.
16            All right.  In terms of the sentence I am
17   going to impose, pursuant to the Sentencing Reform
18   Act of 1984, the defendant, Austin A. Burns, is
19   hereby committed to the custody of the Bureau of
20   Prisons for a period of 270 months.
21            The Court finds that the defendant does not
22   have the ability to pay a fine.  No fine is imposed.
23            Following your release from custody, you
24   shall serve a -- Mrs. Pollock, I -- or Mrs. Peirson,
25   I should say, what was the term of supervised
```

1    release you requested?

2         MS. PEIRSON:  I didn't give the Court a

3    number.  Normally, in this type of case where I've

4    got a defendant who's got some significant mental

5    health issues and has a prior offense, I do ask for

6    a lengthy term of supervised release; but I do

7    believe that he's going to get the mental health

8    treatment while in the Bureau of Prisons,

9    particularly at the latter end.

10        So I would leave that number to the Court's

11   discretion.  I don't, I don't have a specific number

12   in mind.

13        THE COURT:  Do you have any thoughts, Mrs.

14   Pollock?

15        MS. POLLOCK:  Your Honor, I think that the,

16   due to the amount of time he's going to be in the

17   Bureau of Prisons, five years of supervised release

18   after that should be sufficient.

19        He is also going to be required to register

20   as a sex offender for the rest of his life, so I

21   don't see how any more than five years is going to

22   accomplish any, anything for either the Court or for

23   Mr. Burns.

24        THE COURT:  All right.  I'm comfortable

25   with five years.

```
 1            So, following your release from custody,
 2   you shall serve a five-year term of supervised
 3   release.
 4            Within 72 hours of your release from
 5   custody from the Bureau of Prisons, you shall report
 6   in person to the probation office in the district to
 7   which you are released.
 8            While on supervised release, you shall not
 9   commit another federal, state, or local crime.
10            You may -- just a second.
11                (Brief pause in proceedings.)
12            THE COURT:  You shall submit to one drug
13   test within 15 days of release from imprisonment.
14   You shall -- and two drug tests thereafter as
15   directed by the Probation Office.  You shall not
16   possess a controlled substance.
17            Pursuant to statute, you shall cooperate in
18   the collection of DNA as directed by the probation
19   officer or the Bureau of Prisons.
20            You shall not possess a firearm,
21   ammunition, destructive device, or any other
22   dangerous weapon.
23            You shall also comply with the following
24   additional terms of supervised release.
25            You shall not knowingly leave the judicial
```

 1    district without the permission of the Court or
 2    probation officer.
 3            You shall report to the probation officer
 4    in a manner and frequency as directed by the Court
 5    or probation officer.
 6            These two terms are being imposed because
 7    they are administrative requirements necessary to
 8    supervision.
 9            You shall not knowingly answer falsely any
10    probation officer's question.  You shall follow the
11    probation officer's instructions as they relate to
12    your conditions of supervision.  You agree that this
13    condition does not infringe on your Fifth Amendment
14    rights against self-incrimination, so you can not
15    answer a question if you think you would incriminate
16    yourself.
17            I'm imposing this condition to facilitate
18    supervision by assisting the probation officer in
19    keeping informed of your location, your mental
20    condition, your physical condition, your conduct,
21    whether or not you're complying with the conditions
22    of supervision.  All of that is going to assist you
23    in deterring you from re-offending.  It's going to
24    help protect the public -- a variety of reasons.
25            You shall notify the probation officer of

 1    any change in your residence, employer, or workplace
 2    within 72 hours.  This condition is being imposed in
 3    order to assist the probation officer in keeping
 4    informed, again, of your location, condition,
 5    conduct -- for all the same reasons I stated
 6    previously.
 7              You shall not knowingly meet, communicate,
 8    or otherwise interact with any person engaged in, or
 9    planning to engage in, criminal activity unless
10    granted permission to do so by the probation
11    officer.  This is being done in order to help you
12    successfully complete your period of supervised
13    release.  Having you abstain from contact with
14    anyone engaged in criminal activity will stop you
15    from being enticed to participate.
16              You shall permit -- or at least it will
17    reduce the chance of you participating.
18              You shall permit a probation officer to
19    visit you at your home or elsewhere between the
20    hours of 6:00 a.m. and 11:00 p.m., unless
21    investigating a violation or in a case of an
22    emergency.  You shall permit confiscation of any
23    contraband observed in plain view by the probation
24    officer.
25              This is done for the simple reason that

1    we're trying to help you get reintegrated into the

2    community.  While you're on supervised release,

3    which is another form of punishment, you have a

4    reduced expectation of privacy.  In other words, all

5    the normal things about search warrants and probable

6    cause don't apply to you.  They don't apply to a

7    visit by a probation officer, to be more specific,

8    to your home -- or any convicted person -- while

9    you're serving that term of supervised release.

10   That's why I'm imposing that term about the visits

11   by the probation officer.

12          You shall notify the probation officer

13   within 72 hours of being arrested or questioned by a

14   law enforcement officer.  That's being done in order

15   to protect the public from any further crimes of a

16   person in your situation under supervised release.

17   The U.S. Probation Office has to be aware of any

18   contact you have with law enforcement to determine

19   if you're actually becoming involved in more

20   criminal activity -- or criminal activity again.

21          All right.  As directed by the probation

22   officer, you shall participate in a psychological

23   and behavioral testing, evaluation, and assessment

24   program for the treatment and monitoring of sex

25   offenders and a sex offender group and for an

1   individual counseling program.  The defendant shall

2   comply with all of the requirements and restrictions

3   of such programs.

4          The defendant shall submit to physiological

5   testing, including polygraph and ples-- I can never

6   pronounce this --

7          MS. POLLOCK:  Plethysmograph.

8          THE COURT:  -- plethysmograph testing, as

9   directed by the treatment prior.

10          I know what it is; I just can't pronounce

11   it.

12          The defendant shall pay for such services

13   if financially able, as directed by the U.S.

14   Probation Office.

15          This condition is recommended because sex

16   offender treatment will help the defendant manage

17   his sexual interest in children in a fashion that

18   can help him avoid future crimes and reduce the risk

19   to the community.  You, you need this program based

20   on your conduct in this case, based on your conduct

21   in previous cases, based on your character as

22   reflected in the presentence report.  This will help

23   assure me and the Probation Office and society -- at

24   least increase the chances -- that you will not

25   re-offend in the future, doing the same type of

1   crimes.  It's going to help you.

2        You shall not knowingly associate with;

3   have verbal, written, telephonic, or electronic

4   communication with; or have physical contact with

5   any female under the age of 18 except:  (1) in the

6   presence of an adult who is aware of the nature of

7   your background and current offense and who has been

8   approved by the Probation Office; (2) in the course

9   of normal commercial business; or (3) in other cases

10  of unintentional or incidental contact.

11       We're doing this because your offense

12  involved your exploitation, your sharing of sexually

13  explicit materials with minors; specifically, female

14  minors.  It included child pornography being

15  exchanged.  So having you have supervised release

16  contact with female minors both protects the public,

17  protects them from any future possibility of

18  criminal conduct -- at least it reduces the

19  possibility of criminal conduct -- and it will help

20  you.  It will help remove the temptation.

21       You shall not knowingly receive, transmit,

22  have under your control, or view any illegal

23  material that depicts sexually explicit conduct as

24  defined in 18 USC Section 2256(2)(A) and (B).  This

25  is being imposed because it will -- avoiding these

1  type of materials will help you successfully

2  participate in sex offender treatment programs.  If

3  you're looking at illegal sexually explicit

4  material, that's going to hurt you in terms of your

5  treatment program; and, also, it's potentially

6  another crime.  But that's done to help you.

7          You shall participate in the U.S. Probation

8  Office's Computer and Internet Monitoring Program

9  during your term of supervision.  This monitoring

10  program will start as soon as possible after your

11  supervision term begins.  You will sign the rules of

12  the Computer Internet and Monitoring Program.  You

13  will comply with the conditions of the Program.

14          During this time, you will install

15  filtering software on any computer you possess or

16  use which will monitor access to websites that

17  depict illegal sexually explicit conduct as defined

18  in that same statute I just stated previously.  You

19  will allow the U.S. probation officer unannounced

20  access to any computer you possess or use to verify

21  that the filtering software is functional.  You will

22  pay for the costs of the filtering software if you

23  are financial able, as directed by the U.S.

24  Probation Office.

25          I'm including this because it's -- number

1    one, it's going to help you avoid sexually graphic

2    materials.  That's going to help you successfully

3    participate in the sex offender treatment programs.

4    Number two, if you're looking at illegal sexually

5    explicit materials, that's going to hurt you in your

6    treatment program, like I said previously.

7    And, finally, it's going to help you overall.  It's

8    going to help you to not re-offend.  If the

9    temptations are removed, it's less likely you're

10   going to do something that could cause -- that could

11   be another crime.

12          All right.  You are agreeing as part of

13   your conditions of supervised release, or another

14   condition, that if there is a reasonable suspicion

15   to believe that you're in violation of a condition

16   of supervised release related to the receipt,

17   transmission, or possession of any illegal material

18   that depicts sexually explicit conduct, or any

19   violation of the Computer and Internet Monitoring

20   Program, or any violation of your sex offender

21   treatment program, you will submit to the search of

22   your person, any automobile, any property under your

23   control -- the search being conducted by the U.S.

24   Probation Office.

25          You will allow the U.S. Probation Office to

 1    conduct periodic unannounced examinations between

 2    the hours of 6:00 a.m. and 11:00 p.m., unless

 3    investigating a violation or in case of an

 4    emergency, of your computer equipment,

 5    Internet-capable devices, similar electronic

 6    devices, related computer peripherals -- all of

 7    which may include retrieval and copying of all data

 8    from these devices to assure compliance with this

 9    condition.  You're also agreeing as part of this

10    condition for the removal of such equipment for the

11    purpose of conducting a more thorough inspection.

12          All of this is being done to ensure

13    compliance with the other terms I've imposed so far.

14    You've got a -- you've got a diminished expectation

15    of privacy while you're on supervision.  I've

16    already discussed that.  That condition is going to

17    help you -- the condition I'm imposing right now --

18    it's going to help you with your rehabilitation and

19    successful reintegration into the community; and

20    mostly, again, it's going to help ensure that you're

21    not being tempted to do the same type of offense

22    again.

23          You will participate in psychiatric

24    services and for a program -- any program of mental

25    health that's going to be set up by the Probation

 1  Office.  This is being done, again, to help you with

 2  your rehabilitation.  The PSR notes that you want to

 3  become healthy.  This will help you reach that goal.

 4      You will register with the state sex

 5  offender registration agency in any state in which

 6  you reside, in which you are employed, in which you

 7  carry on a vacation -- vocation, or you are a

 8  student, as directed by the Probation Office.

 9      Mr. Burns, under both state and federal

10  law, you are required to register as a sex offender.

11  And by the way, don't treat that as though it's not

12  important.  You can actually be sent back to prison

13  under a separate offense for violating that.

14  Understand?

15      DEFENDANT BURNS:  Yes, Your Honor.

16      THE COURT:  Okay.  It's necessary -- it's a

17  necessary condition.  Not only is it the law, both

18  state and federal, it's necessary so that you can be

19  adequately supervised and that others in the

20  community are aware that you may pose a risk to

21  minor victims.  Hopefully, you'll get enough

22  rehabilitation and treatment that you won't pose a

23  risk, but that's there just as a stopgap.

24      And the defendant does not have the ability

25  to pay a fine, so no fine is imposed.

```
 1              Any other terms I need to impose, Mr.
 2   Morris?
 3              PROBATION OFFICER MORRIS:  No, Your Honor.
 4              THE COURT:  Mrs. Pollock, any question
 5   about any of those terms I just imposed?
 6              MS. POLLOCK:  No, Your Honor.
 7              THE COURT:  Ms. Peirson, anything I need to
 8   add?
 9              MS. PEIRSON:  Just a couple things.
10              THE COURT:  On the terms.
11              MS. PEIRSON:  On the terms?  No.
12              Your Honor, I just would ask the Court to
13   make a finding.  I'm sure the Court's aware of the
14   recent Seventh Circuit ruling in Poulin in January
15   of this year; and I'd ask the Court to make a
16   finding that the Court is not reading Poulin to
17   direct an additional condition that on the eve of
18   the defendant's release that the defendant be
19   brought back in front of this Court.
20              It's particularly burdensome in this
21   particular case because Mr. Burns is not from
22   Illinois.  He will more than likely want to be
23   released or go back to the community where his
24   family lives, and it doesn't make any sense.  But
25   it's not the position of the government that that
```

```
 1   directs this Court in any case.

 2           So I would ask the Court to just make a

 3   specific finding in that case and that the, that the

 4   Court has addressed all of the defendant's arguments

 5   in mitigation for sentence.

 6           THE COURT:  Well, the second thing I'm

 7   coming up to in a while in my script.

 8           But the first thing, as far as the Poulin

 9   case is concerned, I do not believe I need to impose

10   that.  That is one isolated case.  It is interesting

11   that the Court of Appeals says that as part of one

12   of the discretionary conditions the Court shall do

13   something, which takes that out of discretionary.

14           In addition, there is no mechanism to do

15   that.  I don't know who has the burden of proof.  In

16   my view, it represents the Seventh Circuit having no

17   understanding of what the probation officers do when

18   someone is released from prison.  I have no idea how

19   I'd conduct such a hearing, what evidence would be

20   offered -- none of that.

21           So for all of those reasons, I specifically

22   reject the suggestion in Poulin that I hold such a

23   hearing -- unless, of course, Mrs. Pollock that's

24   what you'd like me to do, in which case I'll expand

25   upon it, although I think that's probably not what
```

```
 1    you're going to say.

 2           MS. POLLOCK:  No.  We have not requested

 3    it, nor are we requesting it.

 4           THE COURT:  Thank you.

 5           All right.  So for the record, Mrs.

 6    Peirson, do you want any further explanation of my

 7    reasons for imposing my entire sentence, not just

 8    the supervised release conditions, but any of the

 9    rest of it?

10           MS. PEIRSON:  No, Your Honor.

11           THE COURT:  Mrs. Pollock?

12           MS. POLLOCK:  No, Your Honor.

13           THE COURT:  Is there anything unclear, or

14    confusing?  Or have I made any mistakes that need to

15    be corrected of which you are aware, Mrs. Peirson?

16           MS. PEIRSON:  No, Your Honor.

17           THE COURT:  Mrs. Pollock?

18           MS. POLLOCK:  No, Your Honor.

19           THE COURT:  Mrs. Pollock, do you believe I

20    have addressed all of your principal arguments in

21    this sentencing?

22           MS. POLLOCK:  Yes, Your Honor.

23           THE COURT:  All right.  And there was an

24    appeal waiver in this case, I believe.

25           MS. POLLOCK:  That's correct.
```

```
1              THE COURT:  That's correct?  Okay.
2          Mr. Burns, under some circumstances, a
3   defendant has the right to appeal his conviction and
4   sentence.  However, you can waive that right to
5   appeal as part of a plea agreement.  You have
6   entered into a plea agreement which waives some or
7   all of your rights to appeal your conviction and the
8   sentence I just imposed.  Such waivers are generally
9   enforceable; but if you believe the waiver itself is
10  not valid or you have some other theory that will
11  circumvent that waiver, you can present that theory
12  to the Court of Appeals.
13          Any Notice of Appeal must be filed within
14  14 days of the entry of judgment or within 14 days
15  of the filing of a Notice of Appeal by the
16  government.  If you request, the Clerk of the Court
17  will prepare and file a Notice of Appeal on your
18  behalf.  You can also direct your attorney to file a
19  Notice of Appeal, or you can file one yourself.
20          If you cannot afford to pay the costs of an
21  appeal or an attorney to represent you on appeal,
22  you have the right to apply to have the Court waive
23  the filing fee and to ask for a court-appointed
24  attorney on appeal.
25          Do you understand those appeal rights I've
```

```
 1    just explained to you?

 2            DEFENDANT BURNS:  Yes, Your Honor.

 3            THE COURT:  Any questions?

 4            DEFENDANT BURNS:  No Your Honor.

 5            THE COURT:  Anything further on behalf of

 6    the United States, Mrs. Peirson?

 7            MS. PEIRSON:  No, Your Honor.

 8            THE COURT:  Mrs. Pollock?

 9            MS. POLLOCK:  No, thank you.

10                (Brief pause in proceedings.)

11            THE COURT:  If I didn't say it, there's a

12    special assessment that is due and payable

13    immediately.  That's part of the Court's oral

14    sentence I'm pronouncing.

15            Mrs. Pollock, my courtroom deputy just

16    pointed out:  You did not recommend a particular

17    facility.  Is there a facility you'd like him to be

18    housed at?

19            MS. POLLOCK:  Your Honor, we did a little

20    bit of research on this.  The closest facility

21    to his home in South Dakota that has a security

22    classification that could possibly match his is

23    Florence, Colorado.  We'd request Florence.

24            THE COURT:  It is recommended that the

25    defendant serve his sentence in a facility as close
```

 1    to the family in Florence, Colorado, as possible.

 2           Well, his family's in South Dakota.

 3           MS. POLLOCK:  Correct.  Florence is the --

 4           THE COURT:  So it would be --

 5           MS. POLLOCK:  -- closest --

 6           THE COURT:  -- the Florence, Colorado,

 7    prison.

 8           It's further recommended that the defendant

 9    serve his sentence in a facility that will allow him

10    to participate in sex offender treatment, maximize

11    his exposure to educational and vocational

12    opportunities.

13           There's a forfeiture as part of this.  Are

14    you going to submit a separate order, Mrs. Peirson,

15    or would you like me to just encompass that in --

16           MS. PEIRSON:  There will be a separate

17    order for forfeiture.

18           THE COURT:  All right.

19           Pursuant to statute, the defendant shall

20    forfeit any interest in visually -- of any visual

21    depictions of sexually explicit conduct and any

22    property used to commit the offense, including a

23    Samsung Galaxy S3 cell phone and another cell phone

24    and some other -- a Blackberry -- all of which will

25    be the subject of a separate order tendered by the

1  government to the Court.

2          All right.  Now that we've covered those

3  housekeeping matters, anything other than that?

4          And those are all parts of the Court's

5  sentence that I'm pronouncing.

6          Anything other than that?

7          MS. POLLOCK:  No, Your Honor.

8          MS. PEIRSON:  No, Your Honor.

9          THE COURT:  All right.  That will be all

10  for the record.

11          The defendant's remanded to the custody of

12  the U.S. Marshal Service.

13                  *(Hearing concludes, 11:45 a.m.)*

14

15                  * * * * * * * * * *

16

17                  REPORTER'S CERTIFICATE

18              I, LISA KNIGHT COSIMINI, RMR-CRR,

19  hereby certify that the foregoing is a correct

20  transcript from the record of proceedings in the

21  above-entitled matter.

22          Dated this 5th day of November, 2020.

23

24  _____s/Lisa Knight Cosimini_____
            Lisa Knight Cosimini, RMR-CRR
25          Illinois License # 084-002998